**Fill in this information to identify the case:**

Debtor 1: Vivian Sanchez

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: Southern District of Florida
                                                                  (State)

Case number: 18-20331-LMI

Official Form 410S1

# Notice of Mortgage Payment Change

12/15/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF CHALET SERIES III TRUST

**Court claim no.** (if known): 4-1

**Last 4 digits** of any number you use to identify the debtor's account: XXXXXX9562

**Date of Payment Change:**
Must be at least 21 days after date of this notice: 4/1/2020

**New total payment:**
Principal, interest, and escrow, if any: $ 641.55

## Part 1: Escrow Account Payment Adjustment

1. Will there be a change in the debtor's escrow account payment?

   ☐ No

   ☒ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

   **Current escrow payment:** $ 46.22       **New escrow payment:** $ 41.81

## Part 2: Mortgage Payment Adjustment

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?

   ☐ No

   ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

   See attached Loan Modification

   **Current interest rate:** 2.00 %       **New interest rate:** 3.00 %

   **Current principal and interest payment:** $ 516.23       **New principal and interest payment:** $ 599.74

## Part 3: Other Payment Change

3. Will there be a change in the debtor's mortgage payment for a reason not listed above?

   ☒ No

   ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

   Reason for change: _____

   **Current mortgage payment:** $ ___       **New mortgage payment:** $ ___

| Debtor 1 | Vivian | | Sanchez | Case number (*if known*) | 18-20331-LMI |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☒ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

| X | /s/ Matthew Klein | | | Date | 3/4/2020 |
|---|---|---|---|---|---|
| | Signature | | | | |

| Print: | Matthew | | Klein | Title | **Attorney for Secured Creditor** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Company | **Howard Law Group** | | | | |
| Address | **4755** | **Technology Way, Suite 104** | | | |
| | Number | Street | | | |
| | **Boca Raton** | | **FL** | **33431** | |
| | City | | State | ZIP Code | |
| Contact Phone | 954-893-7874 | | | Email | matthew@howardlaw.com |

I HEREBY CERTIFY that on March 4, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF participants:

Robert Sanchez, Esq., 355 W. 49th Street, Hialeah, FL 33012

Nancy K. Neidich, Trustee, P.O. Box 279806, Miramar, FL 33027

Office of the United States Trustee, 51 SW 1st Avenue, Ste. 1204, Miami, FL 33130

and a true and correct copy was mailed to the non-CM/ECF participants:

Vivian Sanchez, 3581 SW 117th Terrace, Unit 5-303, Miami, FL 33175

SN Servicing Corporation                                    Final
323 FIFTH STREET
EUREKA, CA  95501
For Inquiries:  (800) 603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Analysis Date:   February 26, 2020

VIVIAN SANCHEZ                                                                      Loan:
3581 SW 117 AVE UNIT 5-303                                                Property Address:
MIAMI FL  33175                                                           3581 SOUTHWEST 117TH AVENUE UNIT 53
                                                                          MIAMI, FL  33175

## Annual Escrow Account Disclosure Statement
## Account History

This is a statement of actual activity in your escrow account from Feb 2019 to Mar 2020.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Payment Information | Current: | Effective Apr 01, 2020: |
|---|---|---|
| Principal & Interest Pmt: | 516.23 | 599.74 ** |
| Escrow Payment: | 46.22 | 41.81 |
| Other Funds Payment: | 0.00 | 0.00 |
| Assistance Payment (-): | 0.00 | 0.00 |
| Reserve Acct Payment: | 0.00 | 0.00 |
| Total Payment: | $562.45 | $641.55 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Feb 01, 2020 |
| Escrow Balance: | 208.64 |
| Anticipated Pmts to Escrow: | 92.44 |
| Anticipated Pmts from Escrow (-): | 0.00 |
| Anticipated Escrow Balance: | $301.08 |

** The terms of your loan may result in changes to the monthly principal and interest payments during the year.

| Date | Payments to Escrow Anticipated | Payments to Escrow Actual | Payments From Escrow Anticipated | Payments From Escrow Actual | Description | Escrow Balance Required | Escrow Balance Actual |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Starting Balance | 0.00 | (880.30) |
| Feb 2019 |  | 180.16 |  | * |  | 0.00 | (700.14) |
| Feb 2019 |  | 45.04 |  | * |  | 0.00 | (655.10) |
| Mar 2019 |  | 90.08 |  | * |  | 0.00 | (565.02) |
| Apr 2019 |  | 45.04 |  | * |  | 0.00 | (519.98) |
| Apr 2019 |  |  |  | 1,363.88 * | Escrow Disbursement | 0.00 | (1,883.86) |
| May 2019 |  | 755.39 |  | * | Escrow Only Payment | 0.00 | (1,128.47) |
| May 2019 |  | 92.44 |  | * |  | 0.00 | (1,036.03) |
| May 2019 |  |  |  | 485.48 * | Escrow Disbursement | 0.00 | (1,521.51) |
| Jun 2019 |  |  |  | 484.46 * | Escrow Disbursement | 0.00 | (2,005.97) |
| Jul 2019 |  | 92.44 |  | * |  | 0.00 | (1,913.53) |
| Jul 2019 |  |  |  | 484.46 * | Escrow Disbursement | 0.00 | (2,397.99) |
| Aug 2019 |  | 46.22 |  | * |  | 0.00 | (2,351.77) |
| Aug 2019 |  |  |  | 483.43 * | Escrow Disbursement | 0.00 | (2,835.20) |
| Sep 2019 |  |  |  | 482.91 * | Escrow Disbursement | 0.00 | (3,318.11) |
| Oct 2019 |  | 46.22 |  | * |  | 0.00 | (3,271.89) |
| Oct 2019 |  | 46.22 |  | * |  | 0.00 | (3,225.67) |
| Oct 2019 |  |  |  | 482.91 * | Forced Place Insur | 0.00 | (3,708.58) |
| Nov 2019 |  |  |  | 481.88 * | Forced Place Insur | 0.00 | (4,190.46) |
| Nov 2019 |  |  |  | 535.19 * | County Tax | 0.00 | (4,725.65) |
| Dec 2019 |  |  |  | 481.88 * | Forced Place Insur | 0.00 | (5,207.53) |
| Jan 2020 |  |  |  | 481.88 * | Forced Place Insur | 0.00 | (5,689.41) |
| Feb 2020 |  | 6,195.05 |  | * | Escrow Only Payment | 0.00 | 505.64 |
| Feb 2020 |  | 669.53 |  | * |  | 0.00 | 1,175.17 |
| Feb 2020 |  |  |  | 481.88 * | Forced Place Insur | 0.00 | 693.29 |
| Feb 2020 |  |  |  | 484.65 * | Escrow Disbursement | 0.00 | 208.64 |

Page 1

|          | Anticipated Transactions | | | | |
|----------|---|---|---|---|---|
|          |   |   |   |   | 0.00 | 208.64 |
| Feb 2020 | 46.22 | | | | 254.86 |
| Mar 2020 | 46.22 | | | | 301.08 |
|          | $0.00 | $8,396.27 | $0.00 | $7,214.89 | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

Last year, we  anticipated that payments from your account would be made during this period equaling 0.00.  Under Federal law, your lowest monthly balance should not have exceeded 0.00 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Your mortgage contract and State law are silent on this issue.
**(The amount of surplus only exists if the loan is current, the analysis gives a projected overage as if all past due payments are made the month the analysis is processed).**

SN Servicing Corporation  
For Inquiries: (800) 603-0836  
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Final

Analysis Date: February 26, 2020

VIVIAN SANCHEZ                                                                                      Loan:

## Annual Escrow Account Disclosure Statement
## Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments To Escrow | Anticipated Payments From Escrow | Description | Escrow Balance Anticipated | Escrow Balance Required |
|---|---|---|---|---|---|
|  |  |  | Starting Balance | 301.08 | 267.59 |
| Apr 2020 | 44.60 |  |  | 345.68 | 312.19 |
| May 2020 | 44.60 |  |  | 390.28 | 356.79 |
| Jun 2020 | 44.60 |  |  | 434.88 | 401.39 |
| Jul 2020 | 44.60 |  |  | 479.48 | 445.99 |
| Aug 2020 | 44.60 |  |  | 524.08 | 490.59 |
| Sep 2020 | 44.60 |  |  | 568.68 | 535.19 |
| Oct 2020 | 44.60 |  |  | 613.28 | 579.79 |
| Nov 2020 | 44.60 | 535.19 | County Tax | 122.69 | 89.20 |
| Dec 2020 | 44.60 |  |  | 167.29 | 133.80 |
| Jan 2021 | 44.60 |  |  | 211.89 | 178.40 |
| Feb 2021 | 44.60 |  |  | 256.49 | 223.00 |
| Mar 2021 | 44.60 |  |  | 301.09 | 267.60 |
|  | $535.20 | $535.19 |  |  |  |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your escrow balance contains a cushion of 89.20. A cushion is an additional amount of funds held in your escrow balance to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Under Federal law, your lowest monthly balance should not exceed 89.20 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount. Your mortgage contract and State law are silent on this issue.

Your ending balance from the last month of the account history (escrow balance anticipated) is 301.08. Your starting balance (escrow balance required) according to this analysis should be $267.59. This means you have a surplus of 33.49. **(The amount of surplus only exists if the loan is current, the analysis gives a projected overage as if all past due payments are made the month the analysis is processed).**

This surplus must be returned to you unless it is less than $50.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly. As the loan is delinquent, we will not be sending a check for the surplus.

We anticipate the total of your coming year bills to be 535.19. We divide that amount by the number of payments expected during the coming year to obtain your escrow payment.

| **New Escrow Payment Calculation** | |
|---|---:|
| Unadjusted Escrow Payment | 44.60 |
| Surplus Amount: | 2.79 |
| Shortage Amount: | 0.00 |
| Rounding Adjustment Amount: | 0.00 |
| Escrow Payment: | $41.81 |

NOTICE OF RIGHT TO CANCEL PRIVATE MORTGAGE INSURANCE: If you currently pay private mortgage insurance premiums, you may have the right to cancel the insurance. In most cases, you have the right to cancel private mortgage insurance if the principal balance of your loan is 80 percent or less of the current fair market appraised value of your home, and you have a good payment history on your loan. If you want to learn whether you are eligible to cancel this insurance, please contact us at 323 Fifth Street, Eureka, Ca 95501 or 800-603-0836.

**\* Please note if you have autopay/EFT set up on your loan, it is your responsibility to make sure your payment amount is updated.  Enclosed is the EFT form that needs to be completed. Once completed, please fax to the number listed on the EFT form or return in the self-addressed envelope.**

-FB-

Investor Loan # _____

After Recording Return To:

_____
_____
_____
_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Vivian Sanchez**, single

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **6/21/2006**

Loan Number: ███

Property Address: **3581 Sw 117 Ave Unit 5303 Miami, FL 33175** ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. I live in the Property as my principal residence, and the Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

   H. In cases where I received a discharge in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

*FB_Tier1_v2.0*

*NMLS # 1852*


2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  TIME IS OF THE ESSENCE under this Agreement;

    B.  If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

    C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 1/1/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 1/1/2015.

    A.  The new Maturity Date will be: 12/1/2054, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

    B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $250,271.45 (the "New Principal Balance").

    C.  $79,800.42 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $170,471.03. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 12/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 1/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.00000% | 12/1/2014 | $516.23 | $043.84, adjusts annually after year 1 | $560.07, adjusts annually after year 1 | 1/1/2015 | 60 |
| 6 | 3.00000% | 12/1/2019 | $599.74 | Adjusts Annually | Adjusts Annually | 1/1/2020 | 12 |
| 7-Loans Maturity | 3.87500% | 12/1/2020 | $676.53 | Adjusts Annually | Adjusts Annually | 1/1/2021 | 408 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

    D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J. If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026 Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

-FB-

☐ *If this box is checked, Borrower(s) signature must be notarized.*   witness _Marietta_
                                                                        Maria Julia Mesa

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here _____Vivian Sanchez_____   _3_/_28_/_2015_ Date

                                        witness _____
                                        Roberto Perera

State of Florida)
County of __Miami-Dade__ )

On __3/28/2015__ before me, __Roberto Perera__ personally appeared __Vivian Sanchez__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: __Roberto Perera__
Commission expiration date __Oct/20/2017__

> ROBERTO PERERA
> Notary Public - State of Florida
> My Comm. Expires Oct 20, 2017
> Commission # FF 31371
> Bonded Through National Notary Assn.

Personally Known_____ OR Produced Identification __X__
Type of Identification Produced __Florida Drivers license__

---

Sign Here _____   ___/___/___ Date

State of Florida)
County of _____ )
On _____ before me, _____ personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date ___/___/___

Personally Known_____ OR Produced Identification _____

Type of Identification Produced _____

-FB-

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here _____    ___/___/___ Date
State of Florida)

County of _____)

On _____ before me, _____ personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date ___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here _____    ___/___/___ Date
State of Florida)

County of _____)

On _____ before me, _____ personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date ___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Servicer **APR 1 3 2015**            BY _[signature]_  Gwen Vaden   **Authorized Officer**
Date
If applicable: _____
Mortgage Electronic Registration Systems, Inc. Nominee for Servicer

FB_Tier1_v2.0

NMLS # 1852

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Vivian Sanchez

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/21/2006

Loan Number: 7195196725

Property Address: 3581 Sw 117 Ave Unit 5303 Miami, FL 33175

THIS BALLOON PAYMENT DISCLOSURE is made this 6 day of January, 2015, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $79,800.42 WILL BE DUE AND PAYABLE IN FULL ON 12/1/2054, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 480 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

*FB_Tier1_v2.0*

*NMLS # 1852*



ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

_____    _____
Borrower                                                          Date  3/28/2015

_____    _____
Borrower                                                          Date

FB_Tier1_v2.0
NMLS # 1852

## ACKNOWLEDGMENT

STATE OF Florida

COUNTY OF Miami-Dade

On 3/28/15 before me, Roberto Perera, PERSONALLY APPEARED
(DATE)   NAME, TITLE OF OFFICER E.G. NOTARY PUBLIC

Vivian Sanchez

NAME(S) OF SIGNERS

___ personally known to me -or-   X   proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ROBERTO PERERA
Notary Public - State of Florida
My Comm. Expires Oct 20, 2017
Commission # FF 31371
Bonded Through National Notary Assn.

NOTARY SEAL

WITNESS my hand and official seal.

_____
SIGNATURE OF NOTARY

MY COMMISSION EXPIRES ON: Oct 20, 2017

**Description of Attached Document:**

Title to Type of Document: _____

Document Date: _____   Number of Pages: _____

Signers Other Than Named Above: _____

"GENJURAT" 3/11/97 PN

OCWEN LOAN SERVICING, LLC

By: Bendiane Zephir
Servicing Operations Specialist
Date: 29-April-2015

WITNESSES:

Felicia Perry

Gisele Cazeau

STATE OF Florida }
COUNTY OF Palm Beach }

On 29-April-2015, before me, the undersigned Notary Public, personally appeared Bendiane Zephir, Servicing Operations Specialist of Ocwen Loan Servicing, LLC, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Notary Public State of Florida
April N Alston
My Commission EE 214100
Expires 07/05/2016

Witness my hand and official seal.

Notary –     State of Florida
             County of Palm Beach

Prepared by: Gisele Cazeau

Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409